### INGALLS and STOCKMAN *vs.* MORGAN, executrix, &c.

C. sold and conveyed certain lands to I. and B. with covenant of warranty of title, he informing them at the time, and they believing, that the same were unincumbered. The purchase money was secured by three several promissory notes payable at a future day. M. had a judgment against C. which was a lien upon the land, and it was agreed between the attorney and agent of M. and C. the vendor, at the time, or soon after the execution of the deed and the delivery of the notes, that C. should transfer the notes to M. to be applied upon the judgment, and the notes were transferred accordingly, with a guaranty of their payment indorsed thereon by C. The first note of $800, was paid by I. and B. when it fell due, and was applied by M. upon the judgment, according to the agreement. C. became insolvent, and M. knowing his insolvency, at his request re-delivered to C. the other two notes, and C. transferred them to other persons, and they were paid by I. and B. as they became due, to the holder. M. subsequently, by her said agent and attorney, issued an execution and attempted to sell the land, to satisfy the judgment. The purchasers of the land were ignorant of the agreement in regard to the transfer and application of the notes between C. and M. and of the judgment, until after the notes were all paid, and the execution issued. The agent and attorney of M. drew the writings between C. and I. and B. for the sale of the land, and made out the deed and knew that I. and B. were ignorant of the existence of the judgment.

*Held*, that by the agreement on the part of M. to receive the notes and apply them upon the judgment, and the transfer to her, the lien of the judgment upon the land was extinguished in equity, as against I. and B. and their assigns, in good faith, whenever the notes were paid. That under the circumstances, when M. took the value of the land in the notes, and agreed to apply it in satisfaction of the judgment, she precluded herself from afterwards surrendering the notes and charging the land in the hands of innocent purchasers with the payment of the judgment, and that she was the trustee of such purchasers, holding the notes to apply upon the judg-

Ingalls *v.* Morgan.

ment, whenever they were paid, although they were ignorant of the existence of the arrangement for their benefit.

*Held further*, that when by the voluntary arrangement between M. and C. the rights of I. and B. were secured as they would have been, on their application, by a decree of a court of equity, they could not be divested of those rights without their assent; and that an equity sprung up in their favor out of the arrangement, which could not be impaired by any subsequent arrangement between M. and C. to which they were not parties.

*Held also*, that M. was not responsible for the acts or omissions of her agent and attorney while he was acting for C. and I. and B., unless he was under her directions, or the sale was made upon the faith of his acts, and she took the avails as part of the arrangement. But that she was chargeable with his knowledge of the facts and circumstances of the sale in respect to the agreement to receive and apply the notes, and the equities springing from the arrangement. That the subsequent surrender of *the unpaid notes* by M. to C. was a fraud upon I. and B. and their assigns in good faith, and that M. must be deemed to have re-transferred the notes as a voluntary loan or gift to C. as against the owner of the land.

In Equity. The bill in this case was filed for the purpose of obtaining a perpetual injunction, to restrain the defendant from selling, upon a judgment and execution in her favor, and against one Austin Cross, certain real estate described in the bill. The facts are fully stated in the opinion of the court.

*D. Wright*, for the plaintiffs.

*S. Blatchford*, for the defendant.

*By the Court*, JOHNSON, J. The bill in this cause was filed to restrain the defendant, by a perpetual injunction, from selling certain lands and premises in Seneca Falls, in the county of Seneca, upon judgment and execution in her favor against one Austin Cross.

The complainant Ingalls, and Abner N. Beardsley, purchased the premises of Cross, who conveyed the same by deed with covenant of warranty of title. The judgment of the defendant was then a lien upon the premises, but the purchasers were ignorant of its existence and took the conveyance supposing them to be free from incumbrance and under an assurance from the vendor that

they were unincumbered. The purchase money, amounting to $1800, was secured by three promissory notes, made by the purchasers, two of $500 each, and one of $800. At the time the deed was delivered, and the notes received by Cross, or soon after, he turned out the notes to Mr. Arms, who was the attorney of the defendant in the judgments, and her agent for its collection, and who had in his possession various securities turned out by Cross, to be collected and applied in satisfaction of the judgment.

The case, I think, shows satisfactorily, that these notes were transferred by Cross to the defendant, or her agent, Arms, for her, upon an agreement that the amount should be applied in satisfaction of the judgment, as far as the same would go. The $800 note was paid to Arms, and the amount applied. The other two notes were transferred back to Cross, by the defendant or her agent, at the request of the former, before they became due, and were subsequently paid to the holder as they fell due.

Ames drew the writings and made out the conveyance from Cross to Ingalls and Beardsley. The complainants in their bill alledged that Arms was at this time inquired of by Beardsley whether there were any liens or .incumbrances upon the premises, and that he informed the latter there were none. This is denied in the answer. Beardsley and Cross both testify to the fact, and Arms testifies to the contrary. I do not think it very material to ascertain or determine who is in the right in regard to this disputed question of fact. It is pretty clear, I think, that Cross and Arms, both knew that those vendees were purchasing in good faith, without any knowledge or suspicion of the judgment, and that. neither the vendor" nor the attorney communicated the important fact to the vendees, but permitted. them to complete the purchase in ignorance of the defendant's claim upon the land. But the defendant is not to be prejudiced by the conduct of Arms on that occasion; whatever he may have done or omitted to do. He was not her attorney or agent in that transaction. He was not acting for her, or by her authority, in drawing the contract or conveyance between Cross and his vendees. He was their attorney, acting

Ingalls *v.* Morgan.

for them, and the defendant is in no way, that I can perceive, responsible for his acts, or declarations, while so employed in the business of others. True he was her agent and attorney for the purpose of securing and collecting the amount due her on the judgment. But he could not deprive her of the right to enforce it, by any mere declaration he might make in regard to it; unless it could be shown that she had authorized him to make the declaration for her, or that the purchasers were induced to complete the purchase by that means, and the defendant enabled to secure to herself the consideration of such purchase. Had the defendant been privy to this sale, and upon inquiry had informed the purchaser, that there was no lien upon the premises, or had her attorney done so, at her request, or with her knowledge and assent, undoubtedly she would be estopped from enforcing the lien of her judgment, against the purchasers or their assigns in good faith, upon the familiar principle, that where one knowingly suffers another to purchase and expend money on land under an erroneous belief of title, without making known his claim, he shall not afterwards be permitted to assert his legal rights against such person. But the defendant has done nothing of the kind; nor has her agent, when acting for her, and the principle does not apply to this case.

But Arms did act as the defendant's agent, in receiving the notes which formed the consideration for the purchase of the land. The notes were transferred to her, as Arms testifies, by delivery to him, by Cross, and Cross at the same time either indorsed them or guarantied their payment to the defendant. The right of Arms to receive them as agent is not denied, but is rather conceded by the answer, and the act was not repudiated by the defendant. By the transfer, therefore, the defendant acquired a perfect title to the notes and the money to grow due thereon, as against Cross, and all the world, being bound only to make the application according to the agreement, upon the judgment. But it is insisted on the part of the defendant, that this was an arrangement in which these complainants had no interest, that it was merely an agreement between Cross and

the defendant to which the vendees were not parties, and from which no equities could spring in their behalf.

I do not regard it as very material, in an equitable point of view, whether it was or was not understood by the vendees, at the time of making the purchase, that these notes were to go into the hands of the defendant. Nor whether the notes were transferred at the time of the delivery of the deed, or some days afterward. It is the rights and equities which accrued to the respective parties when the arrangement was made, which must govern, and the time is wholly immaterial, except as it may tend to strengthen or weaken the inferences to be drawn from the transaction. Now for whose benefit was this arrangement made, by which this land, thus by the sale converted into money or money obligations, was to be applied upon this judgment? Certainly for the benefit of the purchasers. They had purchased without any knowledge of the lien of the judgment. From the facts disclosed by the case we can see clearly that at any time before the notes fell due, and while they were in the possession of Cross, the purchasers of the land, had the facts now disclosed come to their knowledge, might have invoked the aid of a court of equity successfully, to compel Cross to do precisely what he did by the arrangement, apply these notes or the money to grow due thereon, to the satisfaction and discharge of the lien of the judgment upon the land. Cross knew they were ignorant of the lien, or existence of the judgment, as clearly appears, and he was bound in equity and good conscience to extinguish it, by an application of the value, or consideration of the sale of the land. The defendant's agent knew they were ignorant of the judgment, for he testifies that he has his reasons for knowing that he did not speak of the judgment at the time he made out the deed, and drew the writings. He knew when he received the notes, and agreed upon the application, what they were given for, and all the circumstances under which they were given. He knew more; he knew that Cross was irresponsible and unable to respond to his grantees, upon the covenant of warranty in his deed. This knowledge of the agent, for all the purposes of determining the equities of the parties,

Ingalls *v.* Morgan.

must be regarded as the knowledge of the principal. By the agreement, therefore, by which these notes became the exclusive property of the defendant, to be applied upon the judgment, the rights and equities of the grantees, and their assigns in good faith, became as fixed and certain as they would have been by a decree in their favor, or the payment of the purchase money, as such, directly upon the judgment at the time of the purchase and as part of the bargain.

When the defendant acquired a complete title to the notes, under the agreement, and the grantees of Cross became her debtors, complete and perfect equity was secured to all concerned. Equity will regard the application as then made in favor of the grantees, by voluntary arrangement without her authoritative interposition. The application of the notes will be regarded as the payment of the money upon the judgment, in satisfaction and discharge of the lien upon the land. The defendant, as well as the grantees, could have compelled Cross, in a court of equity, to make the same identical application of these notes, that was secured by the arrangement. The grantees, therefore, had acquired rights and equities under and by virtue of that arrangement, of which they could not be divested without their consent. In equity the judgment was satisfied, as against the land, by the application of its money value, and it could not be revived as a lien to be enforced and made available over again, by any new and secret arrangement between the defendant and Cross, to which others interested were not parties. (*Baring* v. *Moore*, 4 *Paige*, 168. *Marvin* v. *Vedder*, 5 *Cowen*, 671.)

It is of no consequence that the grantees of Cross were wholly ignorant not only of the judgment but of the transfer and re-transfer of their notes. It is enough, that the defendant, or her agent, and Cross knew all the facts and circumstances, and they must be regarded as having dealt in reference to the manifest equities of the grantees, in making the application of the notes, and for their benefit and protection. In making the re-tranfer of two of the notes to Cross, at his request, the defendant must be taken to have made them upon the personal credit of Cross, and as a loan or gift to him, so far as these complainants are

Ingalls *v.* Morgan.

concerned. The complainant Stockman being the grantee of Beardsley in good faith, stands in the shoes of the latter in respect to this transaction.

It is true, as claimed by the defendant's counsel, that the vendees and grantees of Cross were bound to take notice of the defendant's judgment, and their ignorance in fact did not prejudice the defendant's rights. But their ignorance of an important fact does not operate to enlarge the rights of the defendant. All she could justly claim against them was the value of the land, and this was secured to her as effectually as though she had been a party to the sale and received the money directly from the grantees, upon the judgment. The fact that she saw proper to relinquish her rights subsequently, in favor of an insolvent grantor, forms no ground for charging the land over in the hands of innocent purchasers.

It was manifestly the defendant's duty, when she had the avails of the sale of the land in her hands, upon an express agreement to apply it upon the judgment, to make the application. Her voluntary surrender and re-transfer of the notes was, under the circumstances, an act of bad faith towards the complainants, and highly prejudicial to their interest. And she must be deemed to have relinquished her own rights instead of theirs. She was their trustee, holding their securities for the extinguishment of the lien of the judgment upon the land, and she had no right to exercise her generosity in favor of a fraudulent and insolvent vendor, to their prejudice.

On this ground alone I am clear that the lien of the judgment should be held to be extinguished against the land; and deem it unnecessary to examine the other questions raised as to the levy of the execution upon the personal property, and the transactions at the sale. I do not perceive that Cross was a necessary party.

A perpetual injunction must therefore be decreed as prayed for in the bill, and the defendant charged with the costs of the suit.

[MONROE GENERAL TERM, December 2, 1851. *Welles, Selden* and *Johnson,* Justices.]